IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| STEPHEN LAWRENCE, Individually and as the Personal Representative of the Estate of Payton Lawrence | § | |
| Plaintiff, | § | |
| v. | § | Case No. 3:24-cv-3141-S (BT) |
| CITY OF MESQUITE, TEXAS and JACK FYALL, | § | |
| Defendants. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE**

Before the Court in this civil rights action under 42 U.S.C. § 1983 is Defendants' Motion to Dismiss (ECF No. 28), which requests that the Court dismiss Plaintiff Stephen Lawrence's Amended Complaint pursuant to Rule 12(b)(6). The question at this procedural stage is whether, accepting the Amended Complaint's well-pleaded factual allegations as true and drawing all reasonable inferences in Plaintiff's favor, the Amended Complaint contains sufficient factual matter to state a plausible claim for relief. For the reasons explained below, the District Judge should **GRANT IN PART** and **DENY IN PART** Defendants' Motion.

***Background***

As alleged in the Amended Complaint, Officer Jack Fyall of the Mesquite Police Department (MPD) was on patrol on December 14, 2023, when he received

a report of a stolen silver Hyundai sedan. Am. Compl. at 4, ¶ 13 (ECF No. 26). Officer Fyall located the Hyundai parked at a 7-Eleven gas pump, activated his emergency lights, and positioned his patrol car behind the Hyundai. *Id.* ¶ 14. There was no one in the Hyundai, so Officer Fyall approached a dark gray Chrysler sedan parked several gas pumps away from the Hyundai. *Id.* ¶ 16. The Chrysler was not the reportedly stolen car and was not suspected of being stolen. *Id.*

Payton Lawrence was in the driver's seat, and two other individuals were in the backseat of the Chrysler. *Id.* The area was well-lit, and the occupants of the Chrysler were all clearly visible to Officer Fyall. *Id.* ¶ 18.

Officer Fyall approached the Chrysler with a flashlight and firearm and positioned himself near the front, passenger side of the car. *Id.* ¶¶ 16–17. After Officer Fyall instructed the occupants to not move, the Chrysler began slowly reversing away from Officer Fyall, then after receiving additional commands from Officer Fyall, the Chrysler car began to slowly move forward but away from Officer Fyall's position. *Id.* at 5, ¶¶ 19–23. This sequence repeated a second time, but when the Chrysler moved forward, Officer Fyall fired three shots into the driver seat, striking and killing Lawrence. *Id.* ¶¶ 22-23. At the time he was shot, Lawrence's hands were visible to Officer Fyall; Lawrence had one hand up and the other on the steering wheel. *Id.* at 6, ¶ 24.

Lawrence's father filed this action against the City of Mesquite (the "City") and Officer Fyall asserting various claims under 42 U.S.C. § 1983. *See generally id.* at 9–23. Specifically, Plaintiff asserts an excessive force claim against Officer Fyall

and municipal liability claims against the City. *Id.* Plaintiff also asserts a wrongful death and survival claim under Texas law. *Id.* at 23–24.

Defendants previously moved to dismiss Plaintiff's complaint (ECF No. 8), which the District Judge set for hearing. *See* Order (ECF No. 15). On the record at the conclusion of the hearing, the District Judge granted Defendants' motion to dismiss but also permitted Plaintiff leave to file an amended complaint. *See* Mot. Dismiss Hearing Tr. at 21–22 (ECF No. 25).

Plaintiff filed an Amended Complaint (ECF No. 26), and Defendants again move to dismiss for failure to state a claim. The Motion is fully briefed, and the District Judge referred the Motion to the undersigned for a recommendation. *See* Order (ECF No. 33).

## *Legal Standard*

When deciding a 12(b)(6) motion for failure to state a claim, the Court "accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quotation marks and citation omitted). To survive Defendants' Rule 12(b)(6) Motion to Dismiss, therefore, Plaintiff's Amended Complaint must contain sufficient factual matter to state a claim for relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "To be plausible, the complaint's '[f]actual allegations must be enough to raise a right to relief above the speculative level.'" *In re Great Lakes Dredge & Dock Co. LLC*, 624 F.3d 201, 210 (5th Cir. 2010) (quoting *Twombly*, 550 U.S. at 555). This pleading standard does

not require "'detailed factual allegations,'" but it does demand more than an unadorned accusation devoid of factual support. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "[A] formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679. Where the facts do not permit the Court to infer more than the mere possibility of misconduct, the complaint has stopped short of showing that Plaintiff is plausibly entitled to relief. *Id.* at 678 (citing *Twombly*, 550 U.S. at 557).

## ***Analysis***

### *Excessive Force and Qualified Immunity*

Defendants assert the defense of qualified immunity regarding Plaintiff's excessive force claim against Officer Fyall. Defendants argue that, during the encounter between Officer Fyall and Lawrence, Lawrence "was ignoring commands to turn off the vehicle and could be seen manipulating the controls of the same." Mot. Br. at 12, ¶ 12(ECF No. 29). At the time Officer Fyall employed deadly force against Lawrence, Defendants argue that Officer Fyall "felt the multi-thousand-pound vehicle moving toward him constituting a deadly threat in the mind of [Officer Fyall]." *Id.*

A governmental employee sued under § 1983 may assert the affirmative defense of qualified immunity. *White v. Taylor*, 959 F.2d 539, 544 (5th Cir. 1992). "Qualified immunity protects government officials performing discretionary functions from suit and liability for civil damages to the extent their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Blakely v. Andrade*, 360 F. Supp. 3d 453, 477 (N.D. Tex. 2019) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "When a defendant invokes qualified immunity, the burden is on the plaintiff to demonstrate the inapplicability of the defense." *Ramirez v. Guadarrama*, 3 F.4th 129, 133 (5th Cir. 2021).

However, "an assertion of qualified immunity . . . does not subject the complaint to a heightened pleading standard." *Santander v. Salazar*, 133 F.4th 471, 478 (5th Cir. 2025). At the motion to dismiss stage, "the plaintiff must plead 'facts which, if proved, would defeat the claim of qualified immunity." *Id.* (cleaned up) (quoting *Guerra v. Castillo*, 82 F.4th 278 (5th Cir. 2023)). This Court may "do no more than determine whether the plaintiff has filed a short and plain statement of his complaint, a statement that rests on more than conclusions alone." *Id.* (cleaned up) (quoting *Anderson v. Valdez*, 845 F.3d 580, 590 (5th Cir. 2016)).

"The qualified immunity analysis has two components: (1) whether a plaintiff alleges or shows the violation of a federal constitutional or statutory right; and (2) whether the right in question was clearly established at the time of the alleged violation." *Ramirez*, 3 F.4th at 133 (citing *Pearson v. Callahan*, 555 U.S.

223, 232 (2009)). Thus, to overcome Officer Fyall's assertion of qualified immunity, Plaintiff must allege facts sufficient to show that Officer Fyall's conduct violated Lawrence's constitutional rights, and that the violation of Lawrence's rights was clearly established at the time of Officer Fyall's conduct. However, at this early stage of litigation, the Court does not scrutinize contested facts. Rather, "the relevant inquiry remains whether the complaint states a valid, plausible claim when viewed in the light most favorable to the Plaintiff" and "it is the defendant's conduct *as alleged in the complaint* that is scrutinized for 'objective legal reasonableness.'" *Ramos v. Taylor*, 646 F. Supp. 3d 807, 817 (W.D. Tex. 2022) (citations omitted) (emphasis in original).

The parties brief the impact of *Barnes v. Felix*, 605 U.S 73 (2025) on this case. In *Barnes*, the Supreme Court analyzed the Fifth Circuit's application of the moment-of-threat rule in resolving excessive-force claims. *Id.* at 78. This rule confined a court's inquiry to "the situation existing 'at the moment of the threat' that sparked the fatal shooting." *Id.* (cleaned up). The Supreme Court unanimously held that the moment-of-threat rule improperly restricted the Fourth Amendment's "totality of the circumstances" standard. *Id.* at 79.

Defendants contend that *Barnes* "left a gap in the analysis when qualified immunity is raised." Mot. Br. at 11 (ECF No. 29). Defendants note that the qualified immunity analysis requires a determination of what law was clearly established at the time of the incident, and *Barnes* was decided after the incident in question. *Id.* at 11. Therefore, Defendants argue, the Court's inquiry into the reasonableness of

Officer Fyall's conduct was constrained to the moment of the threat resulting in Officer Fyall's deadly use of force. *Id.* Defendants reason that "the clearly established law applicable to this 202[3] incident was that which existed in the [Fifth Circuit] prior to [the *Barnes* decision in 2025], which was that the circumstances existing at the 'moment of threat' determined the reasonableness of the use of force."[1] *Id.* at 11–12 (emphasis in original).

The Court applies *Barnes* in determining whether the alleged conduct violated the Fourth Amendment, while assessing whether the constitutional right at issue was clearly established based on the law existing when the incident occurred in 2023. As discussed below, Plaintiff has alleged sufficient facts to plausibly establish a constitutional violation under the *Barnes* totality-of-the-circumstances approach. Plaintiff has also alleged sufficient facts to plausibly establish that the constitutional right at issue was clearly established at the time of the alleged violation under the Fifth Circuit's pre-*Barnes* precedent.

1. Fourth Amendment Violation

The Fourth Amendment guarantees the right to be free from unreasonable searches and seizures, including the right to be free from excessive force. *Peterson*

---

[1] The parties contend that, regardless of whether the Court applies the "moment of the threat" or the "totality of the circumstances" standard, the Court would reach the same result, in their respective favor. *See* Mot. Br. at 11–12, ¶ 11–12 (ECF No. 29) ("Regardless, the use of force in this case is reasonable under either standard."); Resp. Br. at 23–24 (ECF No. 31) ("Regardless, under both the 'moment of threat' analysis and the post-*Barnes* 'totality of circumstances' analysis, Fyall's conduct is clearly unreasonable[.]").

*v. City of Fort Worth*, 588 F.3d 838, 844 (5th Cir. 2009); *Joseph v. Bartlett*, 981 F.3d 319, 332 (5th Cir. 2020). To state a claim for excessive force, a plaintiff is required to set forth facts that allege an (1) injury, (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable. *Windham v. Harris Cnty., Tex.*, 875 F.3d 229, 242 (5th Cir. 2017) (quoting *Hamilton v. Kindred*, 845 F.3d 659, 662 (5th Cir. 2017)). Here, Defendants contend that Officer Fyall's actions were objectively reasonable under the circumstances. Mot. Br. at 10, ¶ 10 (ECF No. 29).

A claim for excessive force is analyzed under the Fourth Amendment's objective reasonableness standard. *Graham v. Connor*, 490 U.S. 386, 388 (1989). As previously discussed, the Supreme Court recently reiterated that when an officer uses deadly force, the objective reasonableness standard requires analysis of the "totality of the circumstances." *Barnes*, 605 U.S. at 79. "[T]he 'totality of the circumstances' inquiry into a use of force has no time limit.'" *Id.* at 80. Determining whether the force used was reasonable "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether [the suspect] is actively resisting arrest or attempting to evade arrest by flight." *Bradyn S. v. Waxahachie Indep. Sch. Dist.*, 407 F. Supp. 3d 612, 626 (N.D. Tex. 2019) (citing *Graham*, 490 U.S. at 388); *see also Barnes*, 605 U.S. at 80–81 ("The history of the interaction, as well as other past circumstances known to the officer, thus may inform the reasonableness of the use of force.").

"The inquiry into reasonableness is fact-specific and 'must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Hatcher v. City of Grand Prairie*, 2014 WL 3893907, at *4 (N.D. Tex. Aug. 6, 2014) (Lynn, J.) (quoting *Graham*, 490 U.S. at 396–97).

When analyzing whether Officer Fyall's use of force was reasonable under the circumstances, the Court notes that the threat-of-harm factor is the "most important." *See Irwin v. Santiago*, 2021 WL 4932988, at *2 (5th Cir. Oct. 21, 2021) (not designated for publication) (stating that in the context of fleeing vehicles, the "most important" factor is whether the suspect poses an immediate threat to the safety of the officers or others); *see also Ramirez v. Granado*, 163 F.4th 204, 208 (5th Cir. 2025) (petition for certiorari filed) (stating that this factor "typically predominates the analysis when deadly force has been deployed"). And in the context of determining whether a moving vehicle poses a threat to officers or others, two facts are "highly relevant": (1) the limited time the officers had to respond and (2) the closeness of the officer to the vehicle's projected path. *Irwin*, 2021 WL 4932988, at *2. Therefore, the Court focuses its analysis on whether Lawrence posed an immediate threat to Officer Fyall or others during the encounter.

In the Amended Complaint, Plaintiff alleges that Officer Fyall's use of force "was objectively unnecessary, excessive, and unreasonable under the circumstances, as . . . Lawrence did not pose an immediate threat to the safety of [Officer] Fyall or others." Am. Compl. at 10, ¶ 54 (ECF No. 26). In support of this

assertion, Plaintiff alleges that the area where the incident took place was "well-lit" and the occupants of Lawrence's car were "all clearly visible" to Officer Fyall. *Id.* at 4, ¶ 18. Plaintiff repeatedly asserts that Lawrence's car was moving too slowly to pose a threat to Officer Fyall. *See id.* at 5–6, ¶ 20 (stating that Lawrence "slowly began to reverse backwards and away from [Officer] Fyall and the gas pump" and Lawrence's car "was in reverse and moving slowly for over 10 seconds"), ¶ 21 (describing the vehicle as "slowly mov[ing] forward for approximately 3 seconds"), ¶ 22 (stating that the vehicle "was moving so slowly that [Officer] Fyall had his left hand on the hood of the [vehicle] while he continued to point his firearm directly at [Lawrence] in the driver seat"), ¶ 23 (stating that the vehicle "roll[ed] forward at approximately 1 mph for approximately 1 second"), ¶ 29 ("The vehicle's movement was so slow that it posed no immediate danger to [Officer] Fyall or others[.]"). Plaintiff also states at numerous points that the vehicle's wheels were not pointed in the direction of Officer Fyall, and at the moment of the shooting, the vehicle's wheels were turned away from Officer Fyall. *Id.* at 7, ¶ 32. Further, Plaintiff alleges that "[n]o officer or civilian, including [Officer] Fyall, was trapped or vulnerable to injury at the time [Officer] Fyall discharged his firearm." *Id.* at 6, ¶ 30.

These alleged facts plausibly establish that Lawrence did not pose an immediate threat to Officer Fyall or others during the incident. Plaintiff's Amended Complaint repeatedly asserts that Officer Fyall was not in the path of Lawrence's car, and at all times, Lawrence's car moved at very slow speeds. *See Ramos*, 646 F. Supp. 3d at 819 (finding that plaintiff plausibly stated an excessive force claim

when the plaintiff described the suspect's vehicle as moving slowly while the car was pointed away from officers); *see also Irwin*, 2021 WL 4932988, at *2–3 (in a different procedural posture, noting that the officer was "outside the path of [the suspect's] vehicle even though he was still close to the front of [the vehicle] as [the suspect] began moving"). And the Court finds that the present case is distinguishable from other Fifth Circuit cases in the context of a fleeing vehicle where the Court found that the officer's use of force was reasonable under the circumstances. *See, e.g.*, *Harmon v. City of Arlington*, 16 F.4th 1159, 1165 (5th Cir. 2021) (finding that officer's use of deadly force was reasonable when the officer faced a "threat of falling from a vehicle"); *Goldston v. Anderson*, 775 F. App'x 772, 773 (5th Cir. 2019) (finding that officer did not use excessive force against an uncooperative suspect backing up a vehicle in direction of officer's partner in an attempt to flee); *Dawes v. City of Dallas*, 2022 WL 3273833, at *10–11 (N.D. Tex. Aug. 11, 2022) (Starr, J.) (finding that officer did not use excessive force during an incident occurring in a "relatively tight space in the corner of a parking lot in the dark of night" when suspect in stolen vehicle reversed into police cruiser, hit a fence, and then reversed into—what the officer believed—was in the direct path of other officers).

The Court also notes that, although Officer Fyall was investigating a report of a stolen vehicle, Plaintiff alleges that Lawrence's car "was not a stolen vehicle and was not under suspicion of being a stolen vehicle." Am. Compl. at 4, ¶ 16 (ECF No. 26). Indeed, Plaintiff alleges that Officer Fyall "traveled on foot several gas

pumps over" from the stolen car to engage Lawrence in his car. *Id.* Plaintiff further states that "[o]n information and belief, no individual in [Lawrence's] vehicle was charged with having stole[n] the vehicle." *Id.* at 7, ¶ 33.[2]

Further, there is no allegation in the Amended Complaint that Officer Fyall had any information that Lawrence—or any of the vehicle's occupants—were armed, had violent histories, or would be dangerous to anyone. *See Allen v. Hays*, 65 F.4th 736, 744 (5th Cir. 2023) ("[I]t is manifestly unreasonable for an officer to seize a suspect the officer knows is unarmed and not aggressive by shooting him dead."); *see also Hernandez v. City of Austin*, 2015 WL 7301180, at *4–5 (W.D. Tex. Nov. 17, 2015) (in another procedural posture, highlighting that "nothing in the record indicates that [the officers] were given any information about the suspects . . . or that the suspect(s) was armed or potentially violent" and there was "no evidence that [the plaintiff] had a weapon, was behaving erratically, or was menacing, or that the officers had any reason to believe he was or would be dangerous to anyone"), *adopted by*, 2015 WL 12670886 (W.D. Tex. Dec. 21, 2015). The Amended Complaint further states that Lawrence put his hand(s) up at various times during the interaction with Officer Fyall. *See* Am. Compl. at 5–6, ¶ 19 (ECF

---

[2] The parties elaborated on whether there was a relationship between the occupants of Lawrence's car and the stolen car at the hearing on Defendant's motion to dismiss Plaintiff's original complaint, and Defendants highlight this alleged relationship in their Reply. *See* Mot. Dismiss Hearing Tr. at 9–10 (ECF No. 25) (inquiring into whether there was a relationship between the occupants of Lawrence's car and the stolen vehicle); Reply at 3, ¶ 4 (ECF No. 32). However, the Court's analysis at this stage focuses on the allegations in Plaintiff's Amended Complaint.

No. 26) ("[Lawrence's] hands were up in the air as Fyall made [a] threat."), ¶ 24 ("At the time he was shot, [Lawrence] had one hand up and one hand on the steering wheel."). Although Lawrence failed to follow Officer Fyall's commands, and possibly attempted to flee, the Court finds that this factor alone does not establish Officer Fyall's entitlement to qualified immunity. *See Molina v. Bastrop Cnty. Sheriff's Off.*, 2022 WL 22839635, at *7 (W.D. Tex. Dec. 22, 2022) (finding that, "at the motion-to-dismiss stage, the suggestion that [the suspect] resisted arrest alone does not compel a conferral of a qualified immunity defense" without the benefit of additional discovery), *adopted by*, 2023 WL 11834230 (W.D. Tex. Jan. 25, 2023); *Moore v. City of Houston*, 2025 WL 2646644, at *15 (S.D. Tex. May 30, 2025) (finding that the plaintiffs met their burden of alleging facts capable of establishing a Fourth Amendment violation because the suspect's "noncompliance with [the officers'] instructions [did] not justify [the officer's] alleged use of deadly force as the degree of force was disproportionate and [the suspect] did not pose a threat of serious harm"), *adopted by*, 2025 WL 2645913 (S.D. Tex. Sep. 15, 2025).

Although Defendants argue that many of Plaintiff's allegations are "factually unsupported," that is not dispositive at the motion to dismiss stage. *See* Reply at 4–5, ¶ 6 (ECF No. 32) (asserting that there is no factual support that the encounter between Lawrence and Officer Fyall lasted over two minutes and stating that "[t]he repeated conclusory claims that Officer Fyall must not have perceived danger because he maintained proximity to the suspect vehicle lacks factual support in this record") (footnote omitted); *Ramos*, 646 F. Supp. 3d at 817–18 (describing

defendant's repeated requests for "the Court to examine the detailed facts of what happened during the incident in question" as "premature" at the motion to dismiss stage). The Court determines that Plaintiff has pleaded facts which plausibly establish a constitutional violation.

2. Clearly Established Right

Having found that there are sufficient allegations to support the violation of a constitutional right under the Fourth Amendment, the Court must now determine whether Officer Fyall's actions were objectively reasonable in light of clearly established law at the time of the conduct in question. "The doctrine of qualified immunity affords protection against individual liability for civil damages to officials 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Cornett v. Longois*, 871 F. Supp. 918, 924 (E.D. Tex. 1994) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "The Supreme Court has explained that 'the contours of the right' allegedly violated 'must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Id.* at 924 (citing *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). "Moreover, the 'relevant inquiry focuses on whether a reasonable official in the defendant's position could have believed his conduct to be lawful, considering the state of the law as it existed when the defendant took his challenged actions.'" *Id.* (quoting *Poe v. Haydon*, 853 F.2d 418, 423-24 (6th Cir. 1988)). "Qualified immunity protects a police officer from liability if a reasonable competent law enforcement officer would not have

known that his actions violated clearly established law." *Id.* (citing *Creighton*, 483 U.S. at 639).

In response to Officer Fyall's assertion of qualified immunity, Plaintiff contends that "it was clearly established that shooting an individual in the absence of any danger to the officer or others constitutes a violation of the Fourth Amendment." Resp. Br. at 20 (ECF No. 31). In support of this contention, Plaintiff cites *Garner* and *Lytle*. *See id.* The Supreme Court's holding in *Tennessee v. Garner* supports Plaintiff's general proposition that "[w]here the suspect poses no immediate threat to the officer and no threat to others, the harm resulting from failing to apprehend him does not justify the use of deadly force to do so." *Tennessee v. Garner*, 471 U.S. 1, 11 (1985)). However, as the District Judge highlighted at the hearing on Defendants' motion to dismiss Plaintiff's original complaint, Plaintiff cannot generally rely on *Garner* to defeat qualified immunity. *See* Mot. Dismiss Hearing Tr. at 21 (ECF No. 25); *Dawes v. City of Dallas*, 2024 WL 2268529, at *3 (5th Cir. May 20, 2024) ("The Supreme Court has repeatedly made clear that we may not rely on general rule statements in *Garner* and *Graham* to clearly establish the law in far-afield cases[.]").

The Fifth Circuit in *Lytle* held: "It has long been clearly established that, absent any other justification for the use of force, it is unreasonable for a police officer to use deadly force against a fleeing felon who does not pose a sufficient threat of harm to the officer or others." *Lytle v. Bexar County*, 560 F.3d 404, 417 (5th Cir. 2009). *Lytle* involves a report that a suspect on bond for charges of felony

theft and unlawfully carrying a weapon stole a vehicle. *Id.* at 407. Upon the officer activating his siren and emergency lights, the suspect and officer engaged in a car chase that resulted in a collision with a civilian vehicle. *Id.* The officer pulled his vehicle "twelve-to-fifteen feet" behind the suspect vehicle when the suspect vehicle began reversing toward the police vehicle. *Id.* The officer then fired two shots toward the suspect vehicle, killing a passenger. *Id.* at 408. The Court found that the suspect "did not pose an especially significant threat of harm such that the use of deadly force was justified." *Id.* at 417. In reaching this conclusion, the Fifth Circuit noted that the officer shot at the back of the suspect vehicle at "some distance." *Id.*

Although the District Judge directed the parties to address *Irwin v. Santiago* in future briefing regarding whether Officer Fyall violated a clearly established right under the Fourth Amendment, neither Plaintiff nor Defendants address the case in the motion to dismiss briefing. *See* Mot. Dismiss Hearing Tr. at 18–19 (ECF No. 25). The Fifth Circuit in *Irwin* stated that "circuit precedent establish[es] a Fourth Amendment violation where an officer was positioned *behind* a vehicle that was *moving away from [the officer]* as he fired." *Irwin*, 2021 WL 4932988, at *3 (emphasis in original). In distinguishing *Lytle*, the Fifth Circuit highlighted that the officer shot at a vehicle driving away from the officer that was "three to four houses down the block." *Id.* The Fifth Circuit also distinguished *Flores v. City of Palacios*, a case where "a police officer approached a parked car from behind" and "[w]hile *still at some distance*, the car started to pull away and

the officer shot [the vehicle] in the rear bumper." *Id.* (emphasis added) (citing *Flores v. City of Palacios*, 381 F.3d 391, 395, 399 (5th Cir. 2004)). In applying circuit precedent to the facts presented in *Irwin*, the Fifth Circuit found the officer's position "significant" because the vehicle's path moved "at least generally" in the officer's direction, "whereas in *Lytle* and *Flores* the vehicle was moving away from the officer." *Id.*

Courts in this district and circuit have described *Irwin* as involving a vehicle presenting "a reasonable threat to the officers because the vehicle was *quickly* moving in the officers' direction, and the officers involved were granted qualified immunity due to their deadly force being justified as a result of the vehicles moving in their direction." *Pearson v. Gage*, 2025 WL 2665320, at *11 (N.D. Tex. Aug. 18, 2025) (McKay, J.) (emphasis added) (also citing *Hathaway v. Bazany*, 507 F.3d 312, 315–16, 322 (5th Cir. 2007) and *Sanchez v. Edwards*, 433 F. App'x 272, 273–74 (5th Cir. 2011)), *adopted by*, 2025 WL 2664314 (N.D. Tex. Sept. 17, 2025) (Kinkeade, J.); *see also Ramos*, 646 F. Supp. 3d at 820 (highlighting that *Irwin* held that "the projected path of [the suspect's] vehicle was in the officer's direction, at least generally" and the vehicle "narrowly avoided one of the two officers"); *Hannibal v. Ivory*, 2025 WL 535481, at *6 (S.D. Tex. Feb. 14, 2025) ("[T]he Fifth Circuit has held that a police officer was justified in using deadly force against an accelerating car when the officer was near the car and had an 'extremely brief period of time . . . to react' to the situation."); *Edwards v. Oliver*, 31 F.4th 925, 931–32 (5th Cir. 2022) (highlighting the "projected path" of the suspect vehicle).

The Amended Complaint alleges that Officer Fyall was *not* in the path of Lawrence's car at the moment he shot Lawrence. *See* Am. Compl. at 5, ¶ 20 (ECF No. 26) (stating that Lawrence put the vehicle "into the reverse gear and slowly began to reverse backwards *and away from* [Officer] Fyall") (emphasis added), ¶ 21 ("The wheels of [Lawrence's car] were pointed *away from* [Officer] Fyall, and not directly at him.") (emphasis added), ¶ 22 (stating that Lawrence's car again reversed *away from* Officer Fyall) (emphasis added). At the moment Officer Fyall shot Lawrence, Plaintiff alleges, the vehicle's "wheels were turned left, and not directly at [Officer] Fyall." *Id.* ¶ 23. Plaintiff also alleges that throughout Lawrence's encounter with Officer Fyall and at the moment Officer Fyall shot Lawrence, the car was moving slowly. *Id.* at 5, ¶¶ 20–22; *see id.* ¶ 23 (when Officer Fyall shot Lawrence, the car had "slowly beg[un] to roll forward at approximately 1 mph for approximately 1 second"). *Compare Pearson*, 2025 WL 2665320, at *11 (explaining a line of case law presenting a scenario where officers were granted qualified immunity because the vehicles were "quickly moving in the officers' direction"). And Plaintiff also alleges that Officer Fyall had time to react to Lawrence as the encounter "lasted well over a minute from the time [Officer] Fyall first pointed his gun at [Lawrence] to the time that he shot [Lawrence.]" Am. Compl. at 7, ¶ 31 (ECF No. 26); *see also id.* at 5, ¶¶ 20–22 (Lawrence's car was moving so slowly Officer Fyall was able to move with the vehicle and have his hand on the hood). *Compare Irwin*, 2021 WL 4932988, at *2–3 (noting that the officer had a limited time to respond to the suspect vehicle's movement).

Further, Plaintiff alleges that the area where the incident took place was "well-lit" and that all the vehicle's occupants were "clearly visible" to Officer Fyall. Am. Compl. at 4, ¶ 18 (ECF No. 26). *Compare Dawes*, 2022 WL 3273833, at *11 (noting that encounter occurred "in a relatively tight space in the corner of a parking lot in the dark of night"). Further, the Amended Complaint alleges that, at the moment Officer Fyall employed deadly force, Lawrence "had one hand up and one hand on the steering wheel." Am. Compl. at 6, ¶ 24 (ECF No. 26); *Allen*, 65 F.4th at 745 (finding that the plaintiffs plausibly alleged that the officer knew the decedent "was unarmed and not aggressive").

Plaintiff alleges that the projected path of Lawrence's car was not in Officer Fyall's direction, the vehicle moved slowly, and Officer Fyall had more than a brief period of time to respond to the vehicle's movement. The Court finds that the case law existing in December 2023 gave Officer Fyall reasonable and fair warning that the alleged conduct violated constitutional rights. *See Cooper v. Brown*, 844 F.3d 517, 524 (5th Cir. 2016). Therefore, Plaintiff has plausibly alleged that Officer Fyall violated a clearly established right.

Because the Court finds that Plaintiff alleges sufficient facts, which the Court must accept as true at this stage, to state a viable claim against Officer Fyall on the excessive force claim and overcome qualified immunity, the District Judge should **DENY** Defendants' motion and permit Plaintiff's excessive force claim against Officer Fyall to proceed. However, the Court's finding that Plaintiff has plausibly

alleged facts to overcome qualified immunity does not prevent Defendants from reasserting a qualified immunity defense at the summary judgment phase.

*Municipal Liability*

A municipality is a "person" subject to liability under § 1983 only if municipal employees inflicted the deprivation of a constitutional right pursuant to an official policy or custom. *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 690 (1978); *see also Piotrowski v. City of Houston*, 237 F.3d 567, 579 (5th Cir. 2001). Thus, to state a claim for municipal liability, a plaintiff must identify: "(1) an official policy (or custom), of which (2) a policymaker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose 'moving force' is that policy or custom." *Valle v. City of Houston*, 613 F.3d 536, 541–42 (5th Cir. 2010) (quoting *Pineda v. City of Houston*, 291 F.3d 325, 328 (5th Cir. 2002)). "[I]solated unconstitutional actions by municipal employees will almost never trigger [municipal] liability." *Piotrowski*, 237 F.3d at 578. And a municipality cannot be held liable simply on a theory of *respondeat superior*. *Monell*, 436 U.S. at 691.

As to the first element of a *Monell* claim, an "official policy 'usually exists in the form of written policy statements, ordinances, or regulations, but may also arise in the form of a widespread practice that is so common and well-settled as to constitute a custom that fairly represents municipal policy.'" *Covington v. City of Madisonville*, 812 F. App'x 219, 225 (5th Cir. 2020) (per curiam) (quoting *James v. Harris Cnty.*, 577 F.3d 612, 617 (5th Cir. 2009)). A pattern "requires similarity

and specificity; '[p]rior indications cannot simply be for any and all "bad" or unwise acts, but rather must point to the specific violation in question.'" *Peterson*, 588 F.3d at 851 (citations omitted). It also requires "'sufficiently numerous prior incidents,' as opposed to 'isolated instances.'" *Id.* (citations omitted). "To proceed beyond the pleading stage, a complaint's 'description of a policy or custom and its relationship to the underlying constitutional violation . . . cannot be conclusory; it must contain specific facts." *Peña v. City of Rio Grande City*, 879 F.3d 613, 622 (5th Cir. 2018) (citations omitted); *see also Pinedo v. City of Dallas*, 2015 WL 5021393, at *5 (N.D. Tex. Aug. 25, 2015) (Fitzwater, J.) ("To establish a custom, a plaintiff must [plausibly plead] 'a pattern of abuses that transcends the error made in a single case.'").

Further, "the failure to provide proper training may fairly be said to represent a policy for which the city is responsible, and for which the city may be held liable if it actually causes injury." *Shumpert v. City of Tupelo*, 905 F.3d 310, 317 (5th Cir. 2019) (quoting *City of Canton v. Harris*, 489 U.S. 378, 390 (1989)). Although an alleged failure to train or supervise is a separate theory of municipal liability, the Court applies the same standard articulated above. *See Peña*, 879 F.3d at 623 ("[A] failure-to-train theory requires a plaintiff to provide that '1) the [City] failed to train or supervise the officers involved; 2) there is a causal connection between the alleged failure to supervise or train and the alleged violation of the plaintiff's rights; and 3) the failure to train or supervise constituted deliberate indifference to the plaintiff's constitutional rights.'").

"To establish the third element [of a *Monell* claim], the plaintiff must show either that the policy itself was unconstitutional or that the policy was adopted with deliberate indifference to the known or obvious fact that a specific constitutional violation would follow." *Edwards v. City of Balch Springs*, 70 F.4th 302, 307–08 (5th Cir. 2023) (cleaned up). And "[a] plaintiff who alleges that a policy was one of failure-to-train must show that the failure constituted deliberate indifference to the plaintiff's constitutional rights." *Id.* (cleaned up).

Plaintiff asserts a § 1983 claim against the City under three theories of liability: (1) unconstitutional custom, policy, or practice; (2) failure to train; and (3) failure to supervise and/or discipline. Am. Compl. at 10–23 (ECF No. 26). The Court finds that Plaintiff's theories of municipal liability must be dismissed because he did not sufficiently allege an unconstitutional policy, practice, or custom or that the City acted with deliberate indifference.

1. Unconstitutional Written Policy

The Court first addresses Plaintiff's argument that the MPD's regulations are unconstitutional. *See* Am. Compl. at 2, ¶ 5 (ECF No. 26) ("The City and its Policymakers' . . . affirmative implementation of unconstitutional policies caused [Lawrence's] unwarranted and excruciating physical and mental anguish, injuries, and death."). "If an official policy itself violates federal law, or directs an employee to do so, then the policy is facially unconstitutional, and it necessarily follows that a constitutional violation will most likely occur." *Edwards*, 70 F. 4th at 308 (cleaned up). Thus, a facially unconstitutional official policy's mere existence

satisfies *Monell*'s third element. *Id.* However, "a facially innocuous policy will support liability only if it was promulgated with deliberate indifference to the known or obvious consequences that constitutional violations would result." *Id.* (cleaned up). The Fifth Circuit has held that an official, written policy is unconstitutional "only if it affirmatively allows or compels unconstitutional conduct." *Id.* at 309. On the other hand, where an official, written policy "merely commits some decisions to an individual officer's on-the-scene discretion, or gives some detailed instructions while omitting others, then that policy satisfies *Monell*'s moving-force element only if those features stem from the policymakers' deliberate indifference." *Id.*

Plaintiff provides the following written, official policies that are purportedly unconstitutional:

> MPD regulations state that, "Law enforcement officers are authorized to use deadly force when one of the following applies:
>
> a. To protect the officer or others from what is reasonably believed to be a threat of death of serious bodily harm.
>
> b. To prevent the escape of a fleeing violent felon, who the officer has probable cause to believe will pose a significant threat of death or serious physical injury to the officer or others.
>
> Further, that "Firearms shall not be discharged at or from a moving vehicle, except under exigent circumstances."

Am. Compl. at 7–8, ¶¶ 36–37 (ECF No. 26). Plaintiff does not explain how these policies are unconstitutional. Rather, Plaintiff makes the conclusory statement that these policies are unconstitutional and that Officer Fyall "acted pursuant to an

expressly adopted official policy." *Id.* at 2, ¶ 5 (stating that the City implemented "unconstitutional" policies), 11, ¶¶ 57, 59, 61. Further, the Fifth Circuit has found that a similar official policy on excessive force did not violate the Constitution. *See Edwards*, 70 F.4th at 309–11 (analyzing general use-of-deadly-force policy authorizing law enforcement officers to use deadly force to "protect the officer or others from what is reasonably believed to be a threat of death or serious bodily injury"). And Plaintiff does not explain how any part of these policies stem from a policymaker's deliberate indifference. Therefore, to the extent Plaintiff bases a municipal liability claim on a facially unconstitutional written policy, the claim fails and should be dismissed.

2. Failure-to-Train and Failure-to-Supervise

Plaintiff next alleges that the City failed to adequately train its officers, which "reflects a deliberate indifference on the City and MPD to the rights of the City's inhabitants[.]" Am. Compl. at 18, ¶ 77 (ECF No. 26). Specifically, Plaintiff avers that the City failed to train its officers on "safe positioning, tactical movement, and cover options" when interacting with vehicles. *Id.* at 18–19, ¶ 78. Plaintiff contends that the City "knew or should have known that officers frequently interact with vehicles and that improper positioning creates obvious risks of escalation." *Id.* To support this contention, Plaintiff states that the City "performed over 300 high speed chases in 2022, so contact with suspect vehicles was a recurring topic that should have required this training." *Id.*

Plaintiff also alleges that the City inadequately trained its officers on excessive force. Specifically, Plaintiff asserts that the City "failed to adequately train officers to refrain from firing into moving vehicles except under circumstances where an officer or civilian faced an immediate threat of death or serious bodily harm"; "failed to provide sufficient training in de-escalation techniques" such as maintaining a safe distance from suspects, avoiding unnecessary escalating encounters, and using communication to diffuse tense situations; "failed to provide scenario-based and recurring training regarding proportionality of force and the use of force continuum"; and "failed to retrain officers following prior incidents of excessive force." *Id.* at 12–13, ¶ 61(c)(i)–(v).

As previously stated, Plaintiff must demonstrate that "the failure to train or supervise constitute[s] deliberate indifference to the plaintiff's constitutional rights." *Edwards*, 70 F.4th at 312. "Deliberate indifference is a 'high standard' that requires 'a complete disregard of the risk that a violation of a particular constitutional right would follow the decision." *Id.* As the Fifth Circuit has explained:

> To show deliberate indifference, a plaintiff normally must allege a pattern of similar constitutional violations by untrained employees. A pattern requires s*imilarity and specificity*; prior indications cannot simply be for any and all "bad" or unwise acts, but rather must point to the specific violation in question. Because deliberate indifference typically requires a pattern, we have stressed that a single incident is usually insufficient to demonstrate deliberate indifference.

*Id.* (cleaned up) (emphasis in original). As stated at the hearing, Plaintiff does not allege that the "single incident" exception applies in this case. Mot. Dismiss

Hearing Tr. at 26 (ECF No. 25). Therefore, Plaintiff must allege a pattern of similar constitutional violations that are sufficiently similar and specific to the present case.

In an attempt to establish an unconstitutional pattern, Plaintiff states—without any detail—that MPD officers "killed approximately six civilians" in 2023. Am. Compl. at 8, ¶ 39 (ECF No. 26). Plaintiff also gives examples of other incidents of alleged excessive force:

- In October 2007, an MPD officer shot a civilian which resulted in the civilian's death. *Id.* at 8, ¶ 41.
- In December 2009, an MPD officer shot a civilian even though the officer "was not in the path of danger as [the civilian] was running away from [the officer] before being shot in the back." *Id.* at 8, ¶ 43.
- In 2011, Officer Fyall "was sued after shooting a [minor] civilian who had surrendered . . . at the conclusion of a police chase." *Id.* at 9, ¶ 45. Plaintiff alleges that the civilian "was involved in a chase with [Officer] Fyall before his vehicle crashed into a fence and stopped." *Id.*
- In August 2013, a MPD officer tasered a civilian "in the groin for 8 seconds," and Officer Fyall "participated in the violent restraint incident and transport of [this civilian] despite clear medical distress, and then in denying [the civilian] medical care, all of which led to [the civilian's] death." *Id.* at 8, ¶ 42.
- In November 2013, an MPD officer shot a civilian. *Id.* at 8, ¶ 41.

- In 2015, Officer Fyall "was sued for excessive force stemming from an incident involving the use of his taser on a suspect who ultimately died from the encounter." *Id.* at 9, ¶ 46.
- In November 2017, an MPD officer shot an unarmed civilian "in the back" when the civilian had "his hands up as he pleaded to not be shot." *Id.* at 8, ¶ 40.

As the District Judge alluded at the motion to dismiss hearing, these examples lack similarity, specificity, and numerosity. *See* Mot. Dismiss Hearing Tr. at 24–26 (ECF No. 25). The incidents that occurred in August 2013 and 2015 involve a taser, which is not similar to the alleged violation in this case. *See* *Edwards*, 70 F.4th at 313 (highlighting factual distinctions in provided examples and finding that the examples did not point to the specific violation in question). Next, the shooting incidents that occurred in October 2007, November 2013, and November 2017—and Plaintiff's conclusory statement that MPD "killed" six civilians in 2023—are not sufficiently specific. *See* *Verastique v. City of Dallas*, 106 F.4th 427, 432 (5th Cir. 2024) (finding that alleged similar incidents were "conclusory and devoid of critical factual enhancement" when the plaintiff alleged that "[b]etween 1998 and 2000, another eight complaints were filed against [the defendant] for alleged physical and verbal abuse"). Based on Plaintiff's allegations, the Court cannot discern whether these incidents are sufficiently similar to the specific violation in this case. *See* *Peterson*, 588 F.3d at 851 (explaining that the plaintiff must provide context that would show a pattern establishing an official

policy condoning excessive force). For example, Plaintiff's allegations regarding these incidents do not allege whether a car was involved or if the suspects were attempting to flee. Therefore, these incidents as alleged cannot establish deliberate indifference.

That leaves Plaintiff with two incidents—the December 2009 and 2011 incidents—to support his claim that the City's deliberate indifference is shown through a pattern of similar unconstitutional violations. But Plaintiff's allegations regarding those incidents lack sufficient factual detail concerning the circumstances of the shootings, such as whether the suspect was fleeing, whether a vehicle was involved at the moment force was used, and whether the officer faced an immediate threat. The Amended Complaint does not plead sufficient facts concerning either incident to establish that they constituted constitutional violations of the same type Lawrence allegedly suffered. Plaintiff has not established a pattern of excessive force that can be said to represent official policy. *See Pineda*, 291 F.3d at 329 (holding that eleven incidents of warrantless entry did not support a pattern of unconstitutional warrantless entry). Therefore, Plaintiff's § 1983 claim premised on the City's purported failure-to-train and failure-to-supervise should be dismissed.

3. Failure-to-Discipline

For the same reasons set forth above, Plaintiff's failure-to-discipline theory should also be dismissed. Plaintiff states that the City "refused to adequately discipline" Officer Fyall even though the City's policymakers "were well aware of

the out-of-control behavior of [Officer] Fyall[.]" Am. Compl. at 22, ¶ 91 (ECF No. 26). Plaintiff further states that the City's failure to discipline its officers after use-of-force incidents "sends a clear message to officers that unconstitutional uses of force will not result in consequences, thereby emboldening future misconduct." *Id.* at 15, ¶ 63.

To plausibly "plead a *Monell* claim in the context of a failure-to-discipline claim, plaintiffs must show (1) that the city's failure to discipline amounted to deliberate indifference and (2) a causal link between the failure to discipline and the violation of their rights." *Verastique*, 106 F.4th at 432; *see also Reyes v. Greer*, 686 F. Supp. 3d 524, 545 (W.D. Tex. 2023) ("For a failure-to-discipline *Monell* claim, a plaintiff must plausibly allege that the municipality has a policy of failing to discipline officers, which they can establish by alleging 'a persistent, widespread practice of [ ] officials or employees, which . . . is so common and well-settled as to constitute a custom that fairly represents municipal policy."). Thus, "to survive dismissal, plaintiffs must cite sufficiently numerous prior incidents, each of which includes specific facts that are sufficiently similar to those alleged" in this case. *Verastique*, 106 F. 4th at 432.

Again, Plaintiff has failed to sufficiently allege similar incidents that rise to the level of a City policy. Plaintiff sets forth three separate incidents of Officer Fyall's alleged excessive force that occurred in 2011, 2013, and 2015. Am. Compl. at 8–9, ¶¶ 42, 45–46 (ECF No. 26). However, only one of those incidents involved a vehicle and a shooting. *See id.* at 9, ¶ 45. To be sure, the prior incidents Plaintiff

identifies reflect individual action that may be deemed "bad or unwise," but as for the City, they do not amount to "a complete disregard of the risk that a violation of a *particular* constitutional right would follow." *Edwards*, 70 F.4th at 314 (citing *Peterson*, 588 F.3d at 851). And beyond Plaintiff's conclusory assertion that "there is no evidence that MPD conducted meaningful investigations or took corrective action" because of the incidents involving Officer Fyall, Plaintiff provides no specific example of the City's failure to discipline Officer Fyall. *See Reyes*, 686 F. Supp. 3d at 545 (dismissing failure to discipline claim when plaintiff vaguely pointed to "historical failures to discipline officers").

Further, nothing in the Amended Complaint suggests that it was "*obvious* [to the City] that 'the highly predictable consequence' of not supervising its officers was that they 'would apply force in such a way that the Fourth Amendment rights of [citizens] were at risk." *Verastique*, 106 F.4th at 433 (emphasis added). The Fifth Circuit has stated that, in determining whether the plaintiff has established deliberate indifference, courts consider contextual factors such as department size and number of arrests. *Id.* at 434. "Absent those contextual factors, it is impossible to identify the existence of a pattern—much less one that imparts constructive notice." *Id.* (emphasis omitted). Plaintiff does not provide any allegations in the Amended Complaint supporting these contextual factors, and therefore, the Court cannot determine that it was obvious that a failure-to-discipline would result in Fourth Amendment violations. *See id.* Plaintiff's scant allegations do not raise a

right to relief above the speculative level, and therefore, Plaintiff's failure-to-discipline claim should be dismissed.

4. Ratification

Finally, it is unclear whether Plaintiff claims that the City is liable under a ratification theory as Plaintiff only refers to ratification in passing. *See* Am. Compl. at 2, ¶ 6 (ECF No. 26) ("Fyall acted in an objectively unreasonable manner and disregarded the rights of [Lawrence], knowing that the City and Policymakers would approve and/or ratify his actions."), 8, ¶ 38 ("MPD and the City's policymakers not only approved of and ratified the conduct of [Officer] Fyall in killing [Lawrence] but has tolerated and ratified similar past incidents involving the use of excessive force."), 16, ¶ 67 ("Despite having knowledge . . . Defendants encouraged, condoned, tolerated and through actions and inactions ratified such policies."), 16, ¶ 68 ("By perpetuating, sanctioning, tolerating, and ratifying the outrageous conduct and other wrongful acts . . . ."), 19, ¶ 82 ("[Officer] Fyall . . . acting pursuant to practices and policies . . . ratified by the Policymakers . . . .").

Nevertheless, Plaintiff has not plausibly alleged that the City is liable under a ratification theory. The Fifth Circuit has "limited the theory of ratification to 'extreme factual situations.'" *Peterson*, 588 F.3d at 848 (quoting *Snyder v. Trepagnier*, 142 F.3d 791, 798 (5th Cir. 1998)); *see also* *Hayes v. City of Magee*, 806 F. Supp. 3d 629, 640 (S.D. Miss. 2025) ("Fifth Circuit precedent requires a plaintiff to prove that their case constitutes an extreme factual situation or involved

manifestly indefensible conduct."). Plaintiff makes only conclusory allegations that the City ratified Officer Fyall's actions. Plaintiff does not identify a policymaker who reviewed or approved Officer Fyall's conduct, identify the substance of any such review, or allege facts showing that a policymaker knowingly approved conduct that was plainly unconstitutional. The Amended Complaint does not explain how this case presents an "extreme factual situation" or "involved manifestly indefensible conduct." *See Webb v. Town of Saint Joseph*, 925 F.3d 209, 217 n.48 (5th Cir. 2019) (noting that the plaintiff's "fleeting" ratification arguments were not enough to demonstrate an extreme factual situation). Plaintiff does not plead facts establishing an extreme factual situation or conduct so manifestly indefensible that a policymaker's post-incident approval could plausibly be treated as municipal policy. Therefore, to the extent Plaintiff attempts to hold the City liable under a ratification theory, it must be dismissed.

5. Leave to Amend Municipal Liability Claims

In sum, Plaintiff has failed to allege an essential element of his *Monell* claims because Plaintiff failed to show an unconstitutional policy or a pattern of similar unconstitutional violations sufficient to demonstrate an official City policy or deliberate indifference. These pleading failures come after the motion to dismiss hearing where the District Judge identified the deficiencies in Plaintiff's municipal liability claims, directed Plaintiff's counsel to relevant case law, and provided Plaintiff with an opportunity to file the Amended Complaint. The Court therefore concludes that Plaintiff has had a meaningful opportunity to plead the factual basis

for his *Monell* claims and that further amendment, absent a proffer of additional facts, would be futile. Therefore, the District Judge should **GRANT** Defendant's motion to dismiss Plaintiff's municipal liability claims and **DENY** Plaintiff leave to further amend the municipal liability claims.

*Wrongful Death and Survival Claims*

Finally, Defendants argue that "[t]he absence of necessary parties compels dismissal of the instant action." Mot. Br. at 13, ¶ 14 (ECF No. 29) (emphasis omitted). Defendants purport that this case must also include Lawrence's "[m]other, spouse (if any) and children (if any)." *Id.* Although Plaintiff did not respond to Defendants' argument, the undersigned independently determines that Defendants' argument fails.

Texas's wrongful death statute provides that a decedent's "surviving spouse, children, and parents . . . may bring the action or one or more of those individuals may bring the action for the benefit of all." Tex. Civ. Prac. & Rem. Code § 71.004(b). In other words, "any wrongful death beneficiary may bring a wrongful death action for the benefit of all beneficiaries." *Roundtree v. City of San Antonio*, 2022 WL 508343, at *2 (W.D. Tex. Feb. 17, 2022). The Amended Complaint expressly states that Plaintiff, as the administrator of Lawrence's estate, asserts the wrongful death claim "on behalf of all those persons entitled by law to recover damages as a result of the wrongful death of Payton Lawrence." Am. Compl. at 23, ¶ 93 (ECF No. 26). Accordingly, Plaintiff's wrongful death and survival claims are not subject to dismissal. *Roundtree*, 2022 WL 508343, at *4 (collecting cases and holding that

"the alleged failure to join any other parent, spouse, or child is not fatal because they are already represented in this action"). Indeed, another court in this district has rejected a similar argument. *See Parham v. City of Burkburnett*, 2017 WL 2712888, at *6 (N.D. Tex. June 1, 2017) (Ray, J.), *adopted by*, 2017 WL 2773688 (N.D. Tex. June 26, 2017) (Lynn, J.). Therefore, the District Judge should **DENY** Defendants' attempt to dismiss Plaintiff's wrongful death and survival claims.

***Recommendation***

For the reasons stated, the District Judge should **GRANT IN PART** and **DENY IN PART** Defendants' Motion to Dismiss (ECF No. 28). Specifically, the District Judge should grant Defendants' motion to dismiss Plaintiff's municipal liability claims against the City but deny Defendants' motion to dismiss Plaintiff's excessive force and state law wrongful death and survival claims against Officer Fyall.

**SO RECOMMENDED.**

August 24, 2026.

HON. R. RUTHERFORD
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND**
**NOTICE OF RIGHT TO APPEAL/OBJECT**

The United States District Clerk is directed to serve a true copy of these findings, conclusions, and recommendation on the parties. Pursuant to Title 28, United States Code, Section 636(b)(1), any party who desires to object to these findings, conclusions, and recommendation must serve and file written objections within 14 days after being served with a copy. A party filing objections must specifically identify those findings, conclusions, or recommendation to which objections are being made. The District Court need not consider frivolous, conclusory, or general objections. A party's failure to file such written objections to these proposed findings, conclusions, and recommendation will bar that party from a *de novo* determination by the District Court. *See Thomas v. Arn*, 474 U.S. 140, 150 (1985). Additionally, any failure to file written objections to the findings, conclusions, and recommendation within 14 days after being served with a copy will bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).